Settles-CN v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-074-CR

     CLYDE NEWTON SETTLES,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 82nd District Court
Falls County, Texas
Trial Court # 6961
                                                                                                    

O P I N I O N
                                                                                                    

      The State charged Appellant Clyde Newton Settles in a two-count indictment with the offenses
of burglary of a building and arson. See Tex. Penal Code Ann. §§ 28.02(a)(2)(D), 30.02(a)(3)
(Vernon 1994). A jury convicted him of both offenses. Two prior felony convictions enhanced
Settles' punishment to the level of a habitual offender. The jury sentenced him to twenty years'
incarceration in the Institutional Division of the Texas Department of Criminal Justice and a
$5,000 fine on the burglary count


 and 99 years' imprisonment on the arson count.
      Settles raises two points in his appeal alleging: (1) the trial court erred in permitting the jury
to assess a fine on the burglary count because the charge did not instruct the jury that a fine could
be assessed; and (2) the evidence is factually insufficient to support his conviction as a party to the
arson charge. We will affirm the judgment.
THE PUNISHMENT CHARGE
      The court's punishment charge instructed the jury that if it found both enhancement allegations
true, then the jurors should assess Settles' punishment at confinement "for any term of not more
than twenty (20) years nor less than two (2) years."


 The charge provided three alternate verdict
forms. In the event the jurors found both enhancement allegations true, the "habitual" verdict
form gave the jury not only the opportunity to assess a period of confinement but also a fine not
to exceed $10,000. The other verdict forms similarly provided for the assessment of a fine. 
Settles did not object to the punishment charge submitted to the jury.
      In its punishment argument, the State called the jury's attention to the fine "instruction"
contained in the "habitual" verdict form. The prosecutor urged the jurors to use this verdict form
in assessing punishment. Settles did not object to this argument.
      Because Settles did not object to the charge as submitted, he must demonstrate "egregious
harm" before we will reverse the judgment and remand for a new punishment hearing. See Kucha
v. State, 686 S.W.2d 154, 155 (Tex. Crim. App. 1985); Tex. Code Crim. Proc. Ann. art.
44.29(b) (Vernon Supp. 1997). That is, he must show that the error was "so egregious and
created such harm that [Settles] `has not had a fair and impartial [punishment hearing].'" Kucha,
686 S.W.2d at 155 (quoting Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). 
"Egregious harm" must be decided from an examination of the entire record. Id.; Almanza, 686
S.W.2d at 171.
      As a habitual offender convicted of a state jail felony, the jury had to sentence Settles within
the punishment range provided for a second degree felony. Tex. Penal Code Ann. §
12.42(a)(2). That range is incarceration for any term of between two and twenty years. Tex.
Penal Code Ann. § 12.33(a) (Vernon 1994). In addition, the offender may be assessed a fine
in any amount not to exceed $10,000. Tex. Penal Code Ann. § 12.33(b) (Vernon 1994).
      The charge was erroneous to the extent that it failed to instruct the jury that Settles'
punishment could include a fine not to exceed $10,000. However, because Settles did not object
to the charge and because the jury assessed his punishment within the range provided by law, he
has failed to show egregious harm. See Ross v. State, 486 S.W.2d 339, 341 (Tex. Crim. App.
1972). Thus, we overrule his first point.
THE FACTUAL SUFFICIENCY OF THE EVIDENCE
      In his second point, Settles contends that the evidence is factually insufficient to support his
conviction as a party to the arson alleged. He cites conflicts between the testimony of his two
accomplices in the commission of the arson as the basis for the alleged insufficiency.
      When presented with a factual insufficiency claim, we discard the prism of the light most
favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We
reverse "only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust." Id. 
      We consider all the evidence in the record related to the contested issue, "not just the evidence
which supports the verdict." Jones v. State, No. 72,026, slip op. at 4 (Tex. Crim. App. Dec. 18,
1996). We review the evidence tending to prove the issue, "and compare[] it to the evidence
which tends to disprove that [issue]." Id. We give appropriate deference to the jury's decision
and do not substitute our judgment for theirs. Clewis, 922 S.W.2d at 135. We do not set aside
the "verdict merely because [we] feel that a different result is more reasonable." Id. (quoting Pool
v. Ford Motor Co., 715 S.W.2d 146, 149 (Tex. 1986)).
      A defendant can be convicted as a party to an offense if the evidence shows that while "acting
with intent to promote or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid [another] to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2)
(Vernon 1994).
      To review the factual sufficiency of the evidence to support Settles' conviction as a party, we
compare the evidence tending to support his involvement as a party with the evidence which tends
to disprove that involvement.
      The State charged Settles with setting a fire in the Bryan Public Library.


 The record reflects
that Settles' twelve-year-old son Clinton set the fire. Settles' cousin Rodney O'Neil also assisted
in the commission of the offense. Clinton testified for the State. O'Neil testified for the defense.



      Our review of the record reveals the following facts which tend to show that Settles directed
and aided Clinton and O'Neil in the commission of the offense. See Tex. Penal Code Ann. §
7.02(a)(2). According to Clinton's testimony, Settles:
      (1)  drove the involved parties to a gas station;
      (2)  gave Clinton the car keys and instructed him to get a gas can out of the trunk and fill it
up;
      (3)  gave Clinton money to pay for the gasoline;
      (4)  told Clinton how to hold the leaky gas can without spilling gasoline on himself;
      (5)  drove the involved parties to the library;
      (6)  drove "around" after O'Neil threw a brick through a library window to see if an alarm
had been activated;
      (7)  with O'Neil, pushed Clinton through the broken window;
      (8)  handed the gas can to Clinton through the window;
      (9)  told Clinton to pile newspapers "and stuff" on the floor;
      (10) with O'Neil, pulled Clinton out through the window; and
      (11) drove the involved parties away from the library.
According to O'Neil's testimony:
      (1)  Settles disliked the City of Bryan and the Bryan Police Department;
      (2)  Settles drove the car at all times pertinent to the commission of the crime;
      (3)  Settles told Clinton to get the gas can out of the trunk and fill it with gasoline;
      (4)  Clinton had no money to pay for the gasoline;
      (5)  Settles told O'Neil to throw the brick through the library window;
      (6)  Settles helped Clinton out of the library window; and
      (7)  it was Settles' idea to burn down the library.
Settles testified that he:
      (1)  drove the car that night;
      (2)  was the only one of the involved parties who had a motive to commit the crime (his
dislike for the city and the police department);
      (3)  gave Clinton the keys to the trunk;
      (4)  parked the car near the library; and
      (5)  helped Clinton out of the library window.
An FBI agent testified that Settles orally confessed he had "burned down the library."



      The record reflects other testimony which tends to show that Settles did not participate in the
commission of the offense. O'Neil testified that he:
      (1)  did not see Settles give Clinton money for the gasoline;
      (2)  never heard Settles say for what purpose he intended to use the gasoline;
      (3)  did not see Settles help Clinton enter the library;
      (4)  did not see Settles give Clinton a match or cigarette lighter to start the fire;
      (5)  never heard Settles say that he intended to burn down the library; and
      (6)  was surprised that Clinton set a fire in the library and did not know that he intended to
set the fire.
Settles testified that he:
      (1)  did not recall telling O'Neil to break the library window;
      (2)  had Clinton buy the gasoline for the purpose of burning a derogatory message in the grass
in front of the library facing the Bryan Police Department;
      (3)  did not give Clinton money to purchase the gasoline;
      (4)  did not tell Clinton to set a fire in the library;
      (5)  did not help Clinton enter the library;
      (6)  did not hold the gas can as Clinton entered the library;
      (7)  did not tell Clinton how to start the fire;
      (8)  did not give Clinton a lighter to ignite the fire;
      (9)  did not get to the library until after it was on fire; and
      (10) only told the FBI agent he was charged with burning down the library.
      We must give due deference to the jury's conclusions regarding the weight and credibility of
the evidence. Clewis, 922 S.W.2d at 133. After reviewing the entire record, we conclude that
the verdict is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust." Clewis, 922 S.W.2d at 134. Thus, the evidence is factually sufficient to support
Settles' conviction as party to the offense.
      We affirm the judgment.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice


Before Chief Justice Davis
            Justice Cummings and
            Justice Vance
Affirmed
Opinion delivered and filed April 9, 1997
Do not publish